UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH P., Sr.,[1]                                                **DECISION AND ORDER**

              Plaintiff,                         1:19-CV-01478 (JJM)

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

        Plaintiff brings this action pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of defendant Commissioner of Social Security that he was not entitled to disability insurance benefits ("DIB") or Supplemental Security Income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2] The parties have consented to my jurisdiction [11]. Having reviewed the parties' submissions [7, 9, 10], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

        The parties' familiarity with the 380-page administrative record is presumed. The plaintiff, then 56 years old, filed applications for DIB and SSI on June 10, 2016, alleging that he

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Unless otherwise noted, page references are to CM/ECF pagination (upper right corner of the page).

had been disabled since September 15, 2015. Administrative Record [6], p. 10.³  His claims were initially denied. Id.  Administrative Law Judge ("ALJ") Bonnie Hannan conducted a video hearing on October 18, 2018.  Id., pp. 10, 20.  Plaintiff appeared with his attorney.  Id., p. 10. The ALJ heard testimony from the plaintiff and vocational expert Bernard Preston.  Id.  On November 1, 2018, the ALJ issued a Decision denying plaintiff's claim.  Id., pp. 10-20.

**A.     The ALJ's Notice of Decision**

The ALJ analyzed plaintiff's claim according to the well-settled, five-step test used to determine entitlement to disability benefits.  Id., pp. 11-12, *citing* 20 C.F.R. §§404.1520, 416.920.  At step two, the ALJ determined that plaintiff had the following severe impairments: cervical stenosis, degenerative joint disease, and depressive disorder. Id., pp. 12-13.  At step three, the ALJ found that plaintiff's impairments did not meet or medical equal the severity of one of the listed impairments. Id., 13, *citing* 20 C.F.R. Part 101 Subpart P, Appendix 1.

Prior to proceeding to step four, the ALJ first determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§404.1567(c), 416.967(c), which included the ability to do simple, routine, repetitive tasks but not at a production rate pace (*e.g.*, assembly line work); make simple work related decisions and tolerate few changes in a routine work setting defined as performing the same duties at the same station or location day to day; and work jobs that do not require financial transactions, such as sales or negotiation, or that require reading, but work can be visually demonstrated. Id., p. 15.⁴

At step four, the ALJ found that, based on testimony of the vocational expert, plaintiff retained the RFC required to perform past relevant work as a cleaner and waxer. Id., p.

---

³     Page references to the Administrative Record refer to the page numbers reflected in the Administrative Record itself (bottom right corner of the page).

⁴     The ALJ accounted for some cognitive limitations that are not at issue here. Id., pp. 16-17.

18.  At step five, the ALJ found that, in the alternative, plaintiff could also perform other jobs existing in the national economy such as laundry worker, packer, and cleaner. Id., pp. 18-20.

The ALJ found the evidence did not support plaintiff's claim that his physical impairments prevented him from performing this type of work, instead finding that those conditions appeared to predate the alleged onset date; there was no record of MRI evaluations or significant orthopedic treatment; recent examinations notes indicated that plaintiff had full range of motion of all joints; and that plaintiff had reported that he does not lift over 50 pounds. Id., pp. 16, 18.  In reaching this determination, the ALJ afforded "[l]ittle weight" to consultative examiner Dr. Balderman's opinion that plaintiff had "mild limitation[s]" in repetitive bending, lifting, and prolonged walking, finding that this opinion "d[id] not address in specific vocational terms the claimant's abilities or limitations".  Id., p. 17.

**B.    Record Evidence**

   **1.    Treatment Records**

Plaintiff was assessed by a primary care provider with a number of afflictions, including depressive disorder and alcoholism. See id., p. 361. Plaintiff was also assessed with several physical conditions, including cervical spinal stenosis, left upper extremity radiculopathy, left shoulder pain, degenerative joint disease, and arthritis. Id., pp. 253, 282, 283, 291, 295.  These conditions were noted as early as the latter half of 2013. Id.

On January 26, 2017, during an annual appointment, plaintiff complained of chronic back pain and leg weakness. Id.  p. 363. However, a contemporaneous musculoskeletal exam showed normal range of motion in all joints. Id., p. 364.

On June 13, 2017, during a trip to the emergency room for evaluation of toxic

ingestion and suicidal ideation, a physical examination was performed on plaintiff that revealed full range of motion in his extremities. Id., pp. 341-342. Plaintiff reported that he walked frequently and had no limitations in mobility. Id., p. 349. Plaintiff also reported that he was on "public assistance" but preferred working and would do "odd jobs". Id., p. 351.

At the hearing, plaintiff's attorney stated that there were no outstanding medical records. Id., p. 46.

### 2. Plaintiff's Statements

In his application for benefits, plaintiff indicated that he worked in environmental services at a hospital from March 2008 until September 2015, where he would wax and strip floors and do other undefined tasks. Id., pp. 205-06. He stopped working there in September 2015 because the job reportedly required him to read instructions and he could not read or write. Id., p. 204. He also reported having arthritis in his back and feet. Id.

At the October 2018 hearing, plaintiff testified that he left his most recent job because he could not read the notes he was being left and thought he would be fired. Id., pp. 56-57. When the ALJ asked him if there were any additional reasons he was unable to perform that job, plaintiff said that he also had pain in his shoulder and back and that the job involved frequent bending. Id., p. 57. Plaintiff testified that he was "on pills and stuff" for his back and shoulder, but that he did not yet have any formal diagnosis. Id. Plaintiff did chores around the house and could generally take care of himself. Id., p. 62. He testified that he was in pain every day, but that the medication helped. Id., p. 63. He testified that he could not walk as much as he used to. Id., 63. When the ALJ asked him how much he could lift or carry, plaintiff said that his doctor "told me don't lift over 50 pounds, so I don't lift over 50". Id., p. 64. Plaintiff reported being able to reach overhead and to bend down to tie his shoes. Id., pp. 65-66.

      **3.**      **Consultative Examination by Samuel Balderman, M.D.**

Dr. Balderman completed a consultive physical examination of plaintiff on October 14, 2016. Id., p. 310. Plaintiff complained to Dr. Balderman of lumbar spine pain and a bunion on his left foot. Id. Plaintiff said his lumbar spine pain had been present for three years and was constant and moderate in intensity. Id. Medication provided partial pain relief. Id. Plaintiff had no MRI evaluations. Id. Plaintiff appeared in no acute distress with a normal gait. Id., p. 311. His squat was 80% of full, and his stance was normal. Id. He was able to move about the examination room without difficulty. Id. Plaintiff's lumbar spine showed flexion to 80 degrees and full lateral range of motion and rotary movement. Id., p. 312. Straight leg raises were negative, and he showed full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles. Id. His joints were nontender and stable. Id. Dr. Balderman opined that plaintiff had "mild limitation[s]" with respect to repetitive bending and lifting, as well as a mild limitation in prolonged walking due to bunion pain on the left foot. Id.

## ANALYSIS

**A.**      **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

While the ALJ's decision addressed a few alleged limitations, plaintiff focuses his appeal solely on his alleged physical limitations. Specifically, plaintiff argues that the ALJ

committed reversible error by formulating an RFC after effectively rejecting the only functional assessment of plaintiff's physical limitations. Plaintiff's Memorandum of Law [7-1], pp. 1, 5-8. The Commissioner responds that, notwithstanding the ALJ's rejection of that portion of the medical opinion, her RFC determination was based on substantial record evidence, including the treatment notes, objective medical findings, and plaintiff's testimony. Commissioner's Brief in Response [9-1], pp. 8-15.

**B.     Did the ALJ impermissibly formulate the RFC?**

The ALJ formulated the RFC after assigning "[l]ittle weight" to consultative examiner Dr. Balderman's opinion that plaintiff had "mild limitation[s]" in repetitive bending, lifting, and prolonged walking. [6], p. 17.  The ALJ found, effectively, that Dr. Balderman's functional opinion was too vague to be useful in assessing plaintiff's residual functionality. Id.  It was certainly her prerogative to do so, as "[t]here is no requirement that the [ALJ] accept the opinion of a consultative examiner concerning a claimant's limitations". Pellam v. Astrue, 508 Fed. App'x 87, 89 (2d Cir. 2013) (summary order); *see also* Torbicki v. Berryhill, 2018 WL 3751290, *5 (W.D.N.Y. 2018) ("[a]n ALJ has discretion to weigh the opinion of a consultative examiner and attribute the appropriate weight based on his review of the entire record"). Moreover, both parties agree that Dr. Balderman's opinion was vague. [7-1], pp. 5-6; [9-1], p. 11.

The parties differ, however, with respect to whether the ALJ was then required to re-contact Dr. Balderman and/or solicit additional functional opinion evidence from a medical source before formulating an RFC.  Plaintiff cites to a line of cases from this District for the seemingly bright-line proposition that "[an] ALJ's rejection of the only opinion evidence in the record - however justified - [leaves] her RFC unsupported by substantial evidence". Wade v.

Commissioner of Social Security, No. 6:18-cv-6774-FPG, [20], p. 4 (W.D.N.Y February 11, 2020); *see also* Salone v. Berryhill, 2018 WL 6333421, *3 (W.D.N.Y. 2018); Henry v. Berryhill, 2018 WL 6039297, *7 (W.D.N.Y. 2018).  Defendant rejects the application of such a bright-line rule and cites to Second Circuit cases suggesting that the ALJ's RFC determination need not "perfectly correspond with any of the opinions of the medical sources". Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order).

The Second Circuit has gone further to say that "[w]here . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." Monroe v. Commissioner of Social Security, 676 Fed. App'x 5, 8 (2d Cir. 2017) (Summary Order) (internal quotations omitted); *see also* Tankisi v. Commissioner of Social Security, 521 Fed. App'x 29, 34 (2d Cir. 2013) (Summary Order) ("[the regulations] suggest remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").

This precept is not necessarily contradicted by the cited cases from this District.  Indeed, those decisions are careful to point out that there may be "case[s] in which a Plaintiff's impairments are relatively simple and mild, such that the ALJ was permitted to render a common sense judgment even without a physician's assessment". Wade, *supra*, p. 4 (*quoting* Ippolito v. Commissioner of Social Security, 2019 WL 3927453, *4 (W.D.N.Y. 2019); *see also* Henry, 2018 WL 6039297 at *7 (acknowledging an exception for "relatively minor" physical impairments).  Other decisions from this District go so far as to say that "the regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion. The regulations could have

been written to require the ALJ to merely adopt an expert opinion when stating the RFC, but they were not". Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *10 (W.D.N.Y. 2018); *see* 20 C.F.R. §404.1527(d)(2) ("[a]lthough we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner").

Thus, there are at least some circumstances where remand is not required merely because the ALJ chose not to adopt the functional opinion of a medical expert. The Commissioner does not specifically invoke the "common sense" exception, but this may be an appropriate case to employ it. Plaintiff adduces no objective proof of any meaningful physical limitations. His treatment records reflect some sporadic, subjective complaints of pain to various providers, but, as the ALJ states, they do not reflect that plaintiff sought or obtained any meaningful orthopedic treatment, evaluation, or imaging. On the contrary, all the medical evidence in the record seems to indicate that plaintiff had no or exceedingly modest physical limitations. He was assessed on multiple occasions with full or nearly full range of motion. *See* [6], pp. 311-312, 342, 364. In June 2017, nearly two years after his alleged onset date, plaintiff reported that he walked frequently, had no limitations in mobility, and would do "odd jobs". Id., pp. 349, 351. At the hearing, he testified to being able to do a wide range of household chores and generally being able take care of himself. Id., p. 62. The only specific physical limitation plaintiff volunteered was being lifting no more than 50 pounds (id., p. 64), precisely the maximum weight allowed under the "medium work" RFC formulated by the ALJ. Id., p. 15 (*citing* 20 CFR §§404.1567(c) and 416.967(c)).

The dearth of support in the record is critical, as plaintiff has both "the general burden of proving that he or she has a disability" and bears the burden "at steps one through four

of the sequential five-step framework". Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); *see also* Beaman v. Commissioner of Social Security, 2020 WL 473618, *6 (W.D.N.Y. 2020) ("[u]ltimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ"). Thus, plaintiff bore the burden to show that he was not capable of performing his past relevant work. "[Plaintiff] cannot satisfy his burden with a lack of evidence." Joshua E. v. Saul, 2021 WL 457445, *4 (W.D.N.Y. 2021).

    While the ALJ has some obligation to affirmative develop the record, that duty "is not unlimited". Blackman v. Berryhill, 2018 WL 3372963, *3 (W.D.N.Y. 2018). Here, in the face of no useful treatment records, the Commissioner ordered a consultative examiner. I do not believe that, under these circumstances, the ALJ was then required to re-contact the consultative examiner for clarification, nor do I agree that plaintiff may simply rely on the Commissioner to supply evidence of his functional limitations when he has failed to produce any. Rather, "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits". Barry v. Colvin, 606 Fed. App'x 621, 622 (2d Cir. 2015) (summary order).

    Finally, this is not a case where the ALJ impermissibly "substitute[d] [her] own interpretation of the medical record for the opinions of treating or examining medical professionals". Salone, 2018 WL 6333421 at *3. Rather, the ALJ merely made the determination, with which plaintiff agrees, that the medical opinion as to functionality was too vague to be informative as to formulating the RFC. [6], p. 17. Otherwise, her RFC determination is largely consistent with Dr. Balderman's findings that plaintiff did not have significant physical limitations. *See* Pellam, 508 Fed. App'x at 90 ("even if the ALJ did not credit all of [the

consultative examiner's] findings, [the consultative examiner's] medical opinion largely supported the ALJ's assessment of [plaintiff's] residual functional capacity").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

**SO ORDERED**.

Dated: March 25, 2021

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge
